UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ELVIN RIOS,

                                                          **DECISION AND ORDER**

                                  Petitioner,      **11-CV-00205F**

            v.
                                                          **(CONSENT**)

JOHN B. LEMPKE,

                                  Respondent.

_____

APPEARANCES:        ELVIN RIOS, *Pro Se*
                              08-B-3316
                              Five Points Correctional Facility
                              Box 119
                              Romulus, New York    14541

                              FRANK A. SEDITA, III
                              MATTHEW B. POWERS
                              Assistant District Attorney, of Counsel
                              Erie County District Attorney's Office
                              Attorney for Respondent
                              25 Delaware Avenue
                              Buffalo, New York 14202

## JURISDICTION

         Petitioner commenced this action on March 10, 2011, requesting habeas corpus

relief under 28 U.S.C. § 2254 ("§ 2254").  This matter is before the court on consent

pursuant to 28 U.S.C. § 636(b)(1)(B).  28 U.S.C. § 636(c) (Doc. No. 10).

## BACKGROUND

         On March 10, 2011, Petitioner Elvin Rios ("Petitioner" or "Rios"), proceeding *pro*

*se*, filed a petition (Doc. No. 1) ("Petition"), commencing this action seeking habeas

corpus relief challenging Petitioner's September 5, 2008 conviction by jury in Erie

County Court, for violations of New York Penal Law ("N.Y. Penal Law")[1] § 140.30(2)(3) (Burglary in the First Degree), § 160.15(3) (Robbery in the First Degree ), § 155.30(4) (Grand Larceny in the Fourth Degree )("the Burglary, Robbery, and Larceny counts")("the First Indictment"), § 160.45(2) (Criminal Possession of Stolen Property in the Fourth Degree), § 190.78(1) (Identity Theft in the Third Degree - three counts), and § 170.10(1) (Forgery in the Second Degree - three counts )("the Criminal Possession, Identity Theft and Forgery counts")("the Second Indictment").  Over Petitioner's objection, the First and Second Indictments ("the Indictments") were consolidated for trial pursuant to N.Y. Crim. Proc. Law § 200.20(2) ("§ 200.20(2)").

Hon. Michael L. D'Amico presided at trial, where the court appointed John R. Nuchereno, Esq. ("Nuchereno") as Petitioner's defense attorney,[2] and the State was represented by Assistant District Attorney Gary W. Hackbush ("ADA Hackbush").

On October 10, 2008, Petitioner was sentenced as a second violent felony offender under the First Indictment, pursuant to N.Y. Penal Law § 70.04 ("§ 70.04"), to a term of 25 years with 5 years of post-release supervision based on Petitioner's Burglary and Robbery counts; and an indeterminate sentence of 2 to 4 years on the Larceny count to run concurrently with the sentences on the Burglary and Robbery counts. Certificate of Conviction - Imprisonment, June 3, 2011.  On October 10, 2008, Petitioner was also sentenced as a second violent felony offender under the Second

---

[1] Unless otherwise indicated all N.Y. Penal Law references are to McKinney's Consolidated Laws of New York.

[2] Prior to Nuchereno's assignment, Petitioner was briefly represented by Ronald C. Trabucco, Esq.

Indictment, pursuant to § 70.04, to an indeterminate sentence of 2 to 4 years on the

Criminal Possession count, an indeterminate sentence of $3^{1/2}$ to 7 years on the three

Forgery counts, and a determinate sentence of 1 year on Petitioner's three Identity

Theft counts, to run concurrently but consecutive to the sentences imposed under the

First Indictment.  Certificate of Conviction - Imprisonment, June 3, 2011.

On April 30, 2010, Petitioner's convictions were unanimously affirmed  by the

New York State Supreme Court Appellate Division, Fourth Department ("the Appellate

Division").  *People v. Rios*, 899 N.Y.S.2d 769 (App. Div. 4th Dep't. 2010) (Appeal on

First Indictment), and *People v. Rios*, 898 N.Y.S.2d 923 (App. Div. 4th Dep't. 2010)

(Appeal on Second Indictment).  Leave to appeal to the New York Court of Appeals

("the Court of Appeals") in both appeals was denied on July 29, 2010.  *People v. Rios*,

933 N.E.2d 1059 (N.Y. 2010).  A request for reconsideration of the denial of leave to

appeal was denied on February 24, 2011.  *People v. Rios*, 944 N.E.2d 1156 (N.Y.

2011).

In his Petition, Petitioner asserts four grounds for federal habeas relief,

specifically that the convictions and sentences are based on (1) admission of unreliable

identification evidence ("First Ground"); (2) insufficient evidence to support Petitioner's

conviction on the Burglary and Robbery counts, and that the verdicts were against the

weight of the evidence ("Second Ground"); (3) improper consolidation of the

Indictments ("Third Ground"); and (4) prosecutorial misconduct ("Fourth Ground") all in

violation the Due Process Clause of the Fourteenth Amendment.

On June 17, 2011, Respondent filed the Declaration of Erie County District

Attorney Matthew B. Powers in Opposition to Petitioner's Writ of Habeas Corpus (Doc.

3

No. 8) ("Powers Declaration") opposing the Petition, attaching exhibits A through C ("Powers Declaration Exh(s). __"), and Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus (Doc. No. 9) ("Respondent's Memorandum").  On July 26, 2011, Petitioner filed Petitioner's Reply In Further Support Of The Petition (Doc. No. 12) ("Petitioner's Reply").  Oral argument was deemed unnecessary.

Based on the following, the Petition is GRANTED in part and DENIED, in part.

### FACTS[3]

As stated, Background, *supra* at 2, Petitioner challenges his September 5, 2008 conviction based on a February 6, 2008 burglary in Buffalo, New York in which Petitioner allegedly robbed a woman Christina Hobbs ("Hobbs") in her apartment, threatened the use of a weapon, seriously injured Hobbs while assaulting her, and used two credit cards stolen from Hobbs following the assault to purchase tobacco and clothing items.

At Petitioner's February 29, 2008 arraignment on the First Indictment, Petitioner, pleaded not guilty.  Arraignment Hearing Tr. at 2.[4]  At Petitioner's July 10, 2008 arraignment on the Second Indictment, Petitioner also pleaded not guilty.  Petitioner requested a *Wade* hearing[5] challenging the photo identification array used by police to

---

[3] Taken from the Petition, Response, Memorandum, exhibits and state court records filed in this action.

[4] References to "Arraignment Hearing Tr.__" are to the transcript of Petitioner's Arraignment held on February 29, 2008.

[5] In a pretrial *Wade* hearing, the trial judge determines whether the pretrial identification of the defendant resulted from impermissibly suggestive law enforcement procedures and, thus, should be suppressed. *United States v. Wade,* 388 U.S. 218 (1967).

facilitate identification of Petitioner as the perpetrator during the investigation of the case.  Arraignment Hearing Tr. at 1.

The *Wade* hearing, at which Petitioner challenged the photo array displayed to Hobbs on February 6, 2008 as unduly suggestive (*Wade* Tr. at 1-40),[6] was held on July 29, 2008.  During the hearing, Buffalo Police Detective Chris Dates ("Dates") testified that after Dates assisted Buffalo Police Detective Patricia Wrest ("Wrest") with assembling the photo array, Dates called Hobbs to come to the police station to view the photo array.  (*Wade* Tr. at 7-8).  Dates further testified that after reading Hobbs instructions from the photo array affidavit and presenting Hobbs with the array, People's Exh. 1, Hobbs proceeded to identify Petitioner as the perpetrator of the assault, and circled and initialed Petitioner's photo in the array.  (*Wade* Tr. at 12).  Dates testified that Nicole Beebe ("Beebe"), a clerk at Olympia Sports, a sporting goods store, viewed the photo array, and indicated that Petitioner was the person who used Hobbs's credit card, after the robbery, to purchase items at the store where Beebe worked on February 6, 2008.  (*Wade* Tr. at 23-24).  On August 7, 2008, the *Wade* hearing continued and Wrest testified that Christopher Salerno ("Salerno"), a clerk at KW Seneca Tobacco store, viewed the photo array and indicated that Petitioner was the individual who used Hobbs's credit card, following the robbery, to purchase items at KW Seneca Tobacco on February 6, 2008.  (*Wade* Tr. at 15-16).  The trial judge, Hon. Michael D'Amico, found the array not unduly suggestive and denied Petitioner's motion to suppress

---

[6] References to *"(Wade* Tr. at __)"* are to the transcript of Petitioner's *Wade* hearing held on July 29, 2008 and August 7, 2008.

Hobbs's in-court identification testimony.  (Tr. at 10).[7]  The trial judge then inquired whether either party wanted to be heard on the record, and defense counsel responded with reference to the issue of consolidation of the two indictments.  (*Wade* Tr. at 36). Petitioner referenced the previously submitted omnibus motion that articulated Petitioner's dilemma of testifying under both indictments, specifically Petitioner's wish to testify at trial on the First Indictment, as to the use or threat to use a dangerous weapon or causing serious physical injury with regard to the Robbery and Burglary counts, and desire not to testify regarding the alleged use of the two stolen credit cards as charged in the Second Indictment.  *Wade* Tr. at 37.  The court rejected Petitioner's request, and granted the prosecutor's request for consolidation.  *Wade* Tr. at 39.

On September 2, 2008, a *Sandoval* hearing[8] was held where the prosecutor reviewed Petitioner's prior felony convictions.  (Tr. at 11-12).  Nuchereno argued in support of Petitioner's "need to testify with regard to the burglary/robbery and the elements of physical injury and threatened use of a weapon" (Tr. at 13), and the trial judge ruled that the prosecutor would be able to cross-examine Petitioner on the previous convictions, but not the number of convictions or related facts.  *Id*.  Petitioner's jury trial commenced on September 2, 2008, and concluded on September 5, 2008, at which time the jury found Petitioner guilty on all counts as charged in the First and Second Indictments.

[7]References to  "(Tr. at __)" are to the specific page number of the trial transcript contained in Volumes 1 through 3 of the state court records.

[8]In New York, a *Sandoval* hearing is held, upon a defendant's request, to determine the extent to which the Defendant will be subject to impeachment by cross-examination about prior bad acts if he chooses to testify.  *Ramos v. Racette,* 726 F.3d 284, 286 (2d Cir. 2013) citing *Grayton v. Ercole,* 691 F.3d 165, 173 (2d Cir. 2012).

Evidence at Petitioner's trial established that at noon on February 6, 2008,

Petitioner knocked on the door of the apartment of Justin Montgomery ("Montgomery"),

a downstairs tenant then residing at 33 Linview Terrace in Buffalo, New York, the same

building where Hobbs resided in the upstairs apartment.  (Tr. at  388, 393).  Upon

receiving no response, Petitioner proceeded to Hobbs's apartment and knocked on her

door.  (Tr. at 308).  At that time, alone in her apartment, Hobbs opened the door of the

apartment a couple of inches and asked if she could help Petitioner.  (Tr. at 390-91,

394).  Petitioner told Hobbs that he had some items to deliver to Montgomery, and

Hobbs responded that Petitioner should speak with the landlord of the building, and

provided Petitioner with directions to an adjacent building where the landlord lived.  (Tr.

at 393).  After Petitioner left Hobbs's apartment, Hobbs looked out her apartment's front

window and observed Petitioner exit the front entrance of her apartment building, and

walk in the direction of the landlord's building.  (Tr. at 393).  Hobbs next saw Petitioner

leave the front area of the landlord's adjacent building, proceed toward a green van

parked in the area in front of Hobbs's building, and drive away.  *Id*.

        That same day, at 1:00 P.M., according to Hobbs, Petitioner again knocked on

the apartment door of Hobbs's apartment, and, after Hobbs opened the door, Petitioner

again told Hobbs he had some items to deliver to Montgomery, and asked if he could

leave the items in the hallway outside of Hobbs's apartment.  (Tr. at 407).  Hobbs

agreed that Petitioner could leave the items in the hallway (Tr. at 409), and watched

from the opened door of her apartment as Petitioner made at least three trips to the

upstairs hallway near Hobbs's apartment carrying items that included a computer

monitor, a computer printer, and a bag of clothing which Petitioner deposited on the

7

hallway floor.  (Tr. at 411).  Hobbs testified that after carrying a coffee table up the

stairs, Petitioner proceeded to place the coffee table on Hobbs's living room floor,[9] at

which time Petitioner forcibly grabbed Hobbs's hair and pushed Hobbs to the floor.  (Tr.

at 414-16).  Hobbs then began to kick and scream for help and Petitioner lay on top of

Hobbs, held Hobbs down on the floor with one hand, and placed his free hand on

Hobbs's mouth.  (Tr. at 417).  Hobbs testified that Petitioner then told Hobbs "stop

screaming or else he would stab me."  *Id*.  Hobbs testified that as she continued to

scream, Petitioner allowed Hobbs to get up from the floor and instructed Hobbs to go to

her bedroom (Tr. at 419), and Hobbs then began to scream even more loudly, and

attempted to run past Petitioner and down the stairs from her apartment.  (Tr. at 420).

As Hobbs was attempting to run past Petitioner, Petitioner grabbed Hobbs around the

waist with both hands and, at the same time, turned his attention toward Hobbs's purse

located near the doorway of her apartment.  (Tr. at 420-21).  After dragging Hobbs back

into her apartment, Petitioner grabbed Hobbs's purse and attempted to run out of the

apartment.  (Tr. at 423).  Spotting a lanyard from her keys hanging out of the purse,

Hobbs asked Petitioner to give her the keys.  (Tr. at 424).  After allowing Hobbs to

remove the keys from her purse Petitioner proceeded downstairs.  *Id*.  Looking out of

the front window of her apartment, Hobbs then witnessed Petitioner run from the

apartment building, get into a green van and drive away.  (Tr. at 358).  Still looking out

the front window of her apartment, Hobbs noticed that the building's landlord, Theodore

Ross ("Ross"), was standing outside of her building near his car.  (Tr. at 359).  Leaving

---

[9]Hobbs's Grand Jury testimony on February 6, 2008,  was "I brought the table into the apartment."  (Tr. at 433).

her apartment, Hobbs ran from her building to where Ross was standing.  *Id*.  Upon

reaching Ross, Hobbs told Ross that she had been robbed and fell to the ground, at

which time Ross helped Hobbs return to her apartment, where Hobbs used Ross's cell

phone to call 911 and report the incident.  *Id*. A few minutes later, Hobbs received a

telephone call from an unidentified police officer who requested a description of the

suspect.  (Tr. at 366).  Hobbs described her attacker as an Hispanic male, 5'10" to 5'11"

tall, weighing 230 pounds, with dark hair and wearing a dark baseball cap.  (Tr. at 427).

　　　Two to three minutes after receiving a radio dispatch pertaining to the robbery at

approximately 1:00 P.M. (Tr. at 540), Buffalo Police Officer James Howe ("Howe") arrived

at Hobbs's apartment to take Hobbs's statement about the incident.  (Tr. at 540, 544).

Upon Howe's arrival, Howe noticed that Hobbs was "shaken," "somewhat upset," that

her clothes "were kind of disheveled," there were "some sort of rug markings on her

face . . . her hair was kind of in disarray," and there was "a cut on the lower jawline,

lower portion of her cheek on the left side of her face."  (Tr. at 543).  Hobbs testified

that the struggle with Petitioner resulted in a cut on her face, bruising over her eye,

bruising on her legs and ankles, cuts in her hair where some of her hair was pulled out

by Petitioner (Tr. at 300), and that she experienced pain for several weeks following the

attack.  (Tr. at 334).  During the visit, Howe observed that a computer monitor and

printer, and some bags and other items were placed near the door of Hobbs's

apartment (Tr. at 545), that a coffee table was overturned in the middle of the floor just

inside the doorway to Hobbs's apartment, and that the living room was in disarray with

items strewn about the floor.  (Tr. at 546-47, 555).  While Howe was interviewing

Hobbs, a second police officer Cavins ("Cavins"), arrived and asked Hobbs if she was

"all set."  *Id*.

Based on his interview with Hobbs, Howe developed a description of a potential suspect as an Hispanic male, approximately 5'8" tall, weighing between 230 and 240 pounds, having dark hair, wearing a dark blue work shirt and blue cap, with a missing or dark colored front tooth, and driving a green minivan with a license plate that included the letters "C", "F" and "O" and the numbers "3908."  (Tr. at 548).  Howe testified that after Police Officer Menza ("Menza") came to Hobbs's apartment, Howe overheard a radio dispatch from Menza that a "hit" was made for a green Chevy Venture minivan with license plate number "CFA 3908" registered under the name of Deborah Feltman ("Feltman") who, according to the dispatch, resided at 46 Robinson Street in Silver Creek, New York, a village a short distance south of Buffalo.  (Tr. at 550-51).

At the same time of Howe's visit, Wrest arrived at Hobbs's apartment and, consistent with Howe's testimony regarding Hobbs's appearance, described Hobbs as "very, very distraught," "crying," "very shaken," "her face was red," "she was almost hysterical," and "[s]he had an injury, a scratch of some sort on one of her cheek, jaw areas."  (Tr. at 564).  Hobbs provided Wrest with a description of the perpetrator similar to the one that she had provided to Howe, and accompanied Wrest to the police station to complete a formal statement.  (Tr. at 566).  After answering a telephone call from her mother, Hobbs informed Wrest that unauthorized charges were made using her two stolen cards.  (Tr. at 329).  Wrest later informed Hobbs that she received information confirming that some purchases had been made using Hobbs's stolen credit cards at Native American Indian, a tobacco store in Irving, New York, and Olympia Sports in

Dunkirk, New York.  (Tr. at 568).[10]  At the same time, Wrest received information that

the green van in question was registered to Feltman (Tr. at 567), and, based on a

telephone call to the Silver Creek Police Department, Wrest determined that the

robbery suspect was Petitioner.  (Tr. at 569).  On February 7, 2008, after reviewing a

printout of transactions using Hobbs's two stolen credit cards, Wrest and Dates drove to

Silver Creek to interview potential witnesses at the retail stores where Hobbs's credit

cards had reportedly been used.  (Tr. at 570).

At First American Tobacco store, Wrest interviewed Salerno, a store clerk, who

provided Wrest with a credit card receipt and a video tape showing a transaction

completed by an individual using one of Hobbs's stolen cards.  (Tr. at 570-71).  Salerno

testified that at approximately 2:00 P.M. on February 6, 2008, while he was working as a

manager at First American Tobacco in Irving, New York, a small community near Silver

Creek, Petitioner, who had according to Salerno, been a regular customer of the KW

Tobacco store, entered the store wearing a "Carriage House Company"[11] uniform and

unsuccessfully attempted to use the store's automatic teller machine ("ATM").  (Tr. at

513-14).  Salerno testified that he asked Petitioner if there was a problem using the

ATM, and Petitioner responded that he could not remember his personal identification

number ("PIN") and that the ATM card he was attempting to use belonged to his sister.

(Tr. at 514).  Salerno testified that Petitioner proceeded to successfully purchase two

packs of cigarettes using one of the credit cards issued in Hobbs's name, a purchase

---

[10]The record does not indicate how Hobbs's mother obtained the information about transactions using Hobbs's stolen credit card shortly after the theft.

[11]Carriage House Company is a food processing company in Fredonia, New York, a short distance from Silver Creek and Irving.  (Tr. at 534-45).

Petitioner often made on other occasions using a similar looking credit card, and also purchased two cartons of cigarettes after driving a green minivan through the store's drive-thru window using a credit card issued in Hobbs's name.  (Tr. at 517).  Salerno's testimony was corroborated by a sales draft processed by First American Native Pride showing that on February 6, 2008, at 1:52 P.M.,  two packs of cigarettes were purchased at KW Tobacco store using a cared issued in Hobbs's name.  (Tr. at 518, 521).  Respondent's Exhibit 30 ("Respondent's Exh. 30").

Wrest and Dates then drove to The Carriage House Company, the place of Petitioner's employ, where Mr. Kleparek ("Kleparek"), Petitioner's supervisor, explained that Petitioner had not shown up for work that day as scheduled.  (Tr. at 571-72).  Wrest and Dates then drove past Feltman's house, located at 68 Robinson Street in Silver Creek, where neither Petitioner nor the green Chevy van were seen.  (Tr. at 571).

In Dunkirk, New York, a small town near Fredonia, Wrest and Dates interviewed Beebe, who provided receipts indicating purchases made at Olympia Sports on February  6, 2008, using a credit card in Hobbs's name.  (Tr. at 572).  Beebe testified that she knew  Petitioner was the individual who purchased the items from Olympia Sports using Hobbs's credit card because Petitioner had helped Beebe with her car five years earlier and she recognized his face from that meeting.  (Tr. at 503).

## DISCUSSION

### 1. Standard of Review

In reviewing a state prisoner's petition pursuant to 28 U.S.C. § 2254, a district court must make an independent determination as to whether the petitioner is in custody in violation of any rights under the Constitution, or any laws or treaties of the

United States.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *reh'g denied*, 501

U.S. 1277 (1991).  Prior to federal court review of a state prisoner's habeas petition, the

prisoner must exhaust all available state court remedies.  28 U.S.C. § 2254(b)(1)(A);

*see Picard v. Connor*, 404 U.S. 270, 275 (1971)(citing cases).  The exhaustion

requirement is not satisfied unless the federal claim has been fairly presented to the

state courts, *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005), and "[a] petitioner

satisfies the fair presentation aspect of the exhaustion requirement by presenting the

essential factual and legal premises of his federal constitutional claim to the highest

state court capable of reviewing it." *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003)

("*Cotto*") (citing *Ramirez v. Attorney General of New York*, 280 F.3d 87, 94 (2d Cir.

2001)).  Although the Second Circuit recognizes that a state defendant may fairly

present the constitutional nature of his claim to the state courts even without citing

chapter and verse of the Constitution, so long as he relies on pertinent federal cases

employing relevant constitutional analysis or alleges a pattern of facts that clearly

implicates a specific constitutional provision, *Cotto*, 331 F.3d at 237 (citing *Strogov v.

Attorney General of New York*, 191 F.3d 188, 191 (2d Cir. 1999) (quoting *Daye v.

Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982))), in this case Petitioner has fairly

presented the factual and legal premises of the constitutional claims asserted in the

Petition to the state courts on direct appeal to the Appellate Division, and request for

leave to appeal to the New York Court of Appeals, thereby satisfying the exhaustion

requirement as a prerequisite to federal habeas review. Respondent does not contend

otherwise.

    In reviewing habeas petitions, a federal court is not permitted to act as appellate

courts to review matters within the jurisdiction of the state courts, or review specific

rulings and decisions of state trial and appellate courts not involving federal

constitutional claims; rather, the court is to determine whether the proceedings in the

state court, as challenged by a habeas petition, amount to a violation of the Petitioner's

federal constitutional rights as declared by the Supreme Court.  28 U.S.C. § 2254(d)(1);

*Coleman*, 501 U.S. at 729.  Accordingly, federal review of state court convictions are

limited to errors of such federal constitutional magnitude they necessarily deny the

criminal defendant the right to a fundamentally fair trial.  *See Cupp v. Naughton*, 414

U.S. 141, 147 (1973).  Pursuant to 28 U.S.C. § 2254(e)("§ 2254(e)"), formerly 28 U.S.C.

§ 2254(d), the state court's determination as to evidentiary matters is presumed correct,

unless the federal habeas court concludes that the relevant state court determination is

not fairly supported by the record, *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981), and it

is the burden of the petitioner to establish, by clear and convincing evidence, that the

court's factual determination is erroneous.  28 U.S.C. § 2254(e)(1).  Section 2254(e),

applies by its terms, "to factual determinations made by state courts, whether the court

be a trial court or an appellate court." *Sumner*, 449 U.S. at 547.

In this case, the court is in possession of the complete state record, including the

motions, hearings and trial transcripts, and briefs filed in connection with Petitioner's

direct appeal to the Appellate Division.  Petitioner has not requested that the court

conduct an evidentiary hearing prior to resolving his claims as alleged in the Petition,

and does not otherwise challenge the record as inaccurate.  Accordingly, the court finds

an evidentiary hearing unnecessary.

Pursuant to § 2254, as amended by Antiterrorism and Effective Death Penalty

Act ("AEDPA"), a federal court must give substantial deference to a state court

determination that has "adjudicated [the federal constitutional claim] on the merits."  28

U.S.C. § 2254(d); *Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).  Specifically,

AEDPA requires that where a state court has adjudicated the merits of a petitioner's

federal claim, habeas corpus relief may not be granted unless the state court's

adjudication

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d) ("§ 2254(d)").

Under *Williams v. Taylor,* 529 U.S. 362, 364 (2000), a federal habeas court may grant

relief if the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law, or decides a case differently than the Supreme Court on a

set of materially indistinguishable facts.  *Id*.  This AEDPA requirement for habeas relief

applies to petitions filed on or after the statute's April 24, 1996 effective date, *See, e.g.*,

*Williams*, 529 U.S. at 402; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Smith v.

McGinnis*, 208 F.3d 13, 15 (2d Cir. 2000) (*per curiam*), *cert. denied*, 531 U.S. 840

(2000), and thus applies to the Petition.  State court decisions involve unreasonable

application of Supreme Court caselaw where such decisions "identif[y] the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably appl[y]

that principle to the facts of [a] prisoner's case."  *Id*.  A federal habeas court must

therefore apply the § 2254(d) deferential review standard where the state court has

"adjudicated [the federal claim] on the merits" 28 U.S.C. § 2254(d), and, in instances where claims have not been adjudicated on the merits, apply the pre-AEDPA *de novo* review standard, even where the petition was filed after the effective date of the statute. *See Sellan*, 261 F.3d at 314; *Boyette v. Lefevre*, 246 F.3d 76, 89, 91 (2d Cir. 2001).

A petitioner alerts the state court to the constitutional nature of a claim by directly citing to a specific constitutional provisions and arguing that such provision was violated. *See Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001) ("if a petitioner cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court."). In many instances whether a state court has adjudicated a federal constitutional claim on its merits is not so clear. *See Jimenez v. Walker*, 458 F.3d 130, 136 (2d Cir. 2006).

In *Sellan*, the Second Circuit articulated three steps a habeas review court should follow to determine whether a federal claim has been adjudicated "on the merits" by a state court. These include (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than determination on the merits of the asserted federal constitutional claims. *See Sellan* 261 F.3d at 314 (citing *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir. 1999)).

In order for the deferential review standards of § 2254(d)(1) to apply, "the state court need only dispose of the [p]etitioner's federal claims on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio v. Artuz*, 269 F.3d 78, 93-94 (2d Cir.

16

2001) (citing *Sellan*, 261 F.3d at 312). Thus, where there is nothing to indicate that the federal claim has been decided solely on state procedural grounds, the federal claim will be considered to have been adjudicated on the merits. *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002). Specifically, the failure to state specific reasons for a state court adjudication on federal claims raised on a petitioner's direct appeal does not avoid a finding that the state court determination was on the merits of each federal ground presented to the appellate court for purposes of applying AEDPA's deferential standards. *See*, *e.g.*, *Brown*, 283 F.3d at 498 ("[b]ecause there is no basis either in the history of the case or the opinion of the Appellate Division for believing that [petitioner's] Sixth Amendment claim was denied on procedural or any other nonsubstantive grounds, we find that his claim was 'adjudicat[ed] on the merits' by the state court, and therefore review his Sixth Amendment claim under the more deferential standard set forth in § 2254." (citing *Sellan*, 261 F.3d at 314)). In this case, on appeal Petitioner specifically contended that the People did not establish proof beyond a reasonable doubt that Petitioner actually possessed a dangerous instrument, Appellant Brief at 12, and. The Appellate Division disposed of Petitioner's federal claims based on improper identification testimony providing that the trial court properly credited police testimony that the photo array shown to Hobbs was not unduly suggestive so as to taint Hobbs's later in-court identification of Petitioner, and rejected Petitioner's claims of insufficient evidence and improper prosecutorial misconduct on summation on procedural grounds. *Rios*, 899 N.Y.S.2d at 771. The Appellate Division further disposed of Petitioner's federal claim of consolidation on the basis of no merit, and disposed of Petitioner's claim of prosecutorial misconduct during trial as cured by the trial court during

17

proceedings. *Id*. The Appellate Division thus decided Petitioner's claims of improperly tainted in-court identification testimony and consolidation on substantive grounds providing reasons for such disposition, thus requiring application of the deferential standards for federal habeas review in accordance with § 2254(d) and *Williams*.

## 2. Merits of Petitioner's Claims

As stated, Petitioner asserts four grounds for habeas relief, including (1) failure to suppress inculpatory evidence, specifically, a photo array used by police during the investigation of Petitioner's alleged offenses, Petition ¶ 12(A) ("First Ground"); (2) lack of sufficient evidence to support each conviction, and that the verdict was against the weight of the evidence Petition ¶ 12(B) ("Second Ground"); (3) prejudicial consolidation of the First and Second Indictments for trial, Petition ¶ 12(C) ("Third Ground"); and (4) prosecutorial misconduct during the prosecutor's examination of Dates and Wrest and in the prosecutor's statements in summation. Petition ¶ 12(D) ("Fourth Ground"). The court addresses the merits of each of Petitioner's grounds in turn.

## A. First Ground - Failure to Suppress Identification Evidence

Petitioner challenges his burglary and robbery convictions on the trial court's failure to suppress the prosecution's identification evidence, Petition ¶ 12(A) at 8, alleging that the presiding judge erred in refusing to suppress Hobbs's identification of Petitioner in an unduly suggestive photo array conducted by Wrest on February 7, 2008. *Id*. Petitioner further alleges that comments made to Hobbs by officer Wrest prior to Hobbs's viewing the photo array, including a comment that the police had a person of interest under investigation and wanted Hobbs to view some photos to see if she recognized anyone in the photos, were unduly suggestive, resulted in a tainted and

erroneously admitted in-court identification by Hobbs of Petitioner, requiring that such in-court identification be suppressed.  Petition ¶ 12(A) at 8.  Specifically, Petitioner asserts that Wrest, by informing Hobbs that the photo array included a photo of a person of interest (Tr. at 25), created an improper expectation to Hobbs that Hobbs should identify a person in the photo array, Petition ¶ 12(A) at 9, that Wrest's indication Hobbs's landlord told Hobbs the police had a partial license plate on the green Chevy van heightened the chance of a misidentification of the perpetrator, and that differences between the physical description Hobbs gave the police about the perpetrator and Petitioner support this assertion, Petition ¶ 12(A) at 10, further tainting Hobbs's in court identification of Petitioner.  Petition ¶ 12(A) at 8.  Respondent maintains that the photo array presented to Hobbs on February 7, 2008, was not unduly suggestive, and that Wrest's comments did not unfairly influence Hobbs's identification of Petitioner in the photo array.  Respondent's Memorandum at 9.

A defendant's due process rights include the right not to be the object of suggestive police identification procedures that create a very substantial likelihood of irreparable misidentification.  *See United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)).  For purposes of due process, the fairness of a photographic array depends on factors that include the size of the array, the manner of presentation, and whether any suggestive comments were incorporated.  *Concepcion*, 983 F.2d at 377.  Photographic arrays do not violate due process requirements where the arrays provide images of more than one individual, there is nothing suggestive in the manner of presentation, and the picture of the accused does not stand out from the other photos in comparison to that of the

accused as to "suggest to an identifying witness that [the accused] was more likely to

be the culprit." *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (citing *United States*

*v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984)).   It is thus the totality of the

circumstances that determines whether an identification procedure is unduly

suggestive. *Simmons*, 390 U.S. 377 at 383; *Connor v. Poole*, 440 Fed. Appx. 29, 31 (2d

Cir. 2011) (identifying factors include witness's opportunity to view criminal during

crime, degree of attention, accuracy of prior descriptions, level of certainty and length of

time between crime and confrontation).   In this case, Petitioner claims that the photo

array was composed by the police without any reference to the description of the

perpetrator as given by Hobbs to Detective Dates.   Petition ¶ 12(A) at 10.   Contrary to

Petitioner's contention however, the photo array presented on February 7, 2008,

included Petitioner's photo alongside the images of five other unidentified individuals,

*Wade* Tr. at 6, 16, each of whom, like Petitioner, had facial hair, somewhat stocky build,

and dark skin tone.  (Tr. at 29).  People's Exh. 1.  The photo array in this case therefore

conforms to due process requirements.   *See Brisco v. Ercole*, 565 F.3d 80, 88, 89 (2d

Cir. 2009) (inquiry for due process purposes includes whether identification procedures

create a very substantial likelihood of irreparable misidentification of defendant as the

perpetrator, and whether identification has independent reliability under the five factors

set forth in *Neil v. Biggers,* 409 U.S. 188, 199-200 (1972) (citing *Raheem v. Kelly*, 257

F.2d 122, 133 (2d Cir. 2001))).   As the Appellate Division found no merit in Petitioner's

contention on appeal as to this issue, *Rios*, 899 N.Y.S.2d 769 at 770, under the AEDPA

deferential review standard, the Appellate Division did not unreasonably misapply

Supreme Court due process precedent to this issue and accordingly, Petitioner's First

Ground asserts no basis for habeas relief.

Nor is there any merit to Petitioner's contention that the photo array evidence should be suppressed because comments made by Detective Wrest to Hobbs at the time the array was shown to Hobbs were unduly suggestive.  Petition ¶ 12(A) at 9. Petitioner relies on *Simmons v. United States*, 390 U.S. 377 (1968), to support the contention that "the chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime" *Simmons*, 390 U.S. at 383.  Specifically, Petitioner contends that Detective Wrest's indication to Hobbs just prior to viewing the photo array, that the array included the image of a person of interest, heightened the chance that Petitioner would be identified as the perpetrator of the crime.  Petition ¶12(A) at 9.  Contrary to Petitioner's assertion otherwise, the record shows no indication that Wrest's comments to Hobbs during the photo array served to heighten Hobbs's misidentification of Petitioner. Specifically, Dates testified that prior to showing the photo array to Hobbs, neither Dates nor Wrest said anything to Hobbs other than they "wanted [Hobbs] to look at some photos."  *Wade* Tr. at 8.  Wrest testified that prior to showing Hobbs the photo array she told Hobbs the police "had prepared some photos . . . [t]here <u>may</u> <u>or</u> <u>may</u> <u>not</u> be a picture of the person who committed the crime against her, and [the police] wanted her to look at the photos and see if she could find someone that may have been the person that had attacked her the day before."  *Wade* Tr. at 26 (underlining added). Petitioner offers no evidence on this point, and a review of the record reveals nothing to indicate that Hobbs was told details about the progress of the investigation, or that the police suggested any specific individual pictured in the photo array was under

suspicion.  Wrest's comment left the identification entirely up to Hobbs; it is devoid of undue suggestiveness.  Moreover, Hobbs testified she had several face-to-face encounters with Petitioner in daylight within a short period of time, Tr. at 309, 310, 314, 316, 324, 352, and described several relevant physical characteristics of the assailant including gender, race, height, build, (Tr. at 326), facial hair (Tr. at 311), and clothing (Tr. at 315), which generally matched the Petitioner, such that the facts as relied upon by the Appellate Division regarding Hobbs's in-court identification of Petitioner had a reliable basis.  *See United States v. Finley,* 245 F.3d 199, 203-04 (2d Cir. 2001) (reliable identification factors include proximity to defendant and lighting).  Accordingly, neither the trial court nor the Appellate Division's determination that the photo array was not the result of an unfair identification practice, or so unduly suggestive as to give rise to a substantial likelihood of irreparable in-court identification, *see Simmons*, 390 U.S. at 384, constitute determinations based on unreasonable application of relevant Supreme Court precedent.  *Finley*, 245 F.3d at 203.  As such, the Petition is DENIED as to this ground.

## B. Second Ground - Sufficiency of the Evidence

Petitioner challenges his first degree burglary and robbery convictions as not supported by sufficient evidence in violation of his federal due process rights.  Petition ¶ 12(B) at 12.  In particular, Petitioner alleges that the prosecutor's evidence was insufficient to support the jury's verdict on (1) the required element for Petitioner's first degree robbery and first degree burglary convictions regarding Petitioner's use or threat to use a dangerous instrument during commission of the crime; and (2) the required element for Petitioner's first degree burglary conviction that Petitioner caused Hobbs

physical injury during the course of the burglary.  Petition ¶ 12(B) at 12.  In particular, Petitioner contends that under applicable New York law, in order to prove that Petitioner used or threatened the use of a dangerous weapon, there must be evidence that Petitioner actually possessed or led Hobbs to believe Petitioner possessed such dangerous instrument. See *People v. Grant*, 959 N.E.2d 479, 483 (N.Y. 2011); *People v. Pena*, 406 N.E.2d 1347, 1350 (N.Y. 1980); *People v. White*, 548 N.Y.S.2d 119 (4th Dep't. 1989); *People v. Hilton*, 535 N.Y.S.2d 708, 710 (1st Dep't. 1989).

Respondent opposes Petitioner's claim as procedurally defaulted because Petitioner's non-specific motion for dismissal at the end of the prosecutor's case-in-chief failed to provide the trial court with the opportunity to consider why the proof was insufficient, failed to address the alleged specific inadequacies of the evidence, and failed to comply with New York's criminal procedure rule to preserve error for appellate review, specifically New York Criminal Procedure Law ("N.Y. Crim. Proc. Law") § 470.05[2] ("§ 470.05[2]"), resulting in procedural default on this claim and thus requiring a showing of cause and prejudice for habeas review. Respondent's Memorandum at 13 (referencing Tr. at 628).  Respondent further contends that Petitioner's prayer for relief on this ground is not subject to federal habeas review under the AEDPA unless Petitioner is able to establish cause and prejudice for Petitioner's procedural default. Because the court addresses the question of Petitioner's alleged procedural default pursuant to the exorbitant application exception to procedural default as a bar to federal habeas review, Discussion, *infra*, at 32-38, the court need not address Respondent's cause and prejudice contention.  Respondent's Memorandum at 12.

As noted, Background, *supra,* at 3, Petitioner's convictions were unanimously

affirmed by the Appellate Division, and on a denial of leave to appeal, relying on New York caselaw, specifically, *People v. Hawkins,* 900 N.E.2d 946, 950 (N.Y. 2008) and *People v. Gray*, 652 N.E.2d 919, 921 (N.Y. 1995), the Appellate Division determined that Petitioner "failed to preserve for our review his contention . . . that the conviction of burglary in the first degree and robbery in the first degree is not supported by legally sufficient evidence."  *Rios*, 899 N.Y.S.2d at 769.  Upon examining, as required, the face of the Appellate Division opinion, it is conclusive that the Appellate Division's disposition of Petitioner's sufficiency of the evidence claim rests on state procedural grounds, *i.e.*, Petitioner's failure to preserve by contemporaneous objection the insufficiency of evidence as a due process issue.  See, *e.g.*, *Jimenez v. Walker*, 458 F.3d*,* 130, 145 (2d Cir. 2006)(reviewing rules that present binary circumstance for federal habeas review). The court therefore must next consider whether such asserted procedural bar is "adequate" to preclude federal habeas review.  *See Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011) (citing *Whitley v. Ercole,* 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Cotto*, 331 F.3d at 247))).  "[T]he question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question." *Cotto*, 331 F.3d at 239 (citing *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988))); *see also Lee v. Kemna,* 534 U.S. 362, 375 (2002) ("*Lee*") (it is not within the state's prerogative to decide whether a state rule is sufficient to bar consideration of a federal claim; adequacy of an asserted state ground to bar review itself is a federal question).

## 1. State Procedural Bar

N.Y. Crim. Proc. Law § 470.05[2] provides two instances where a question of law

can be preserved for appeal: first, through objection at trial by the party later claiming

error, and second, where the trial court makes an express ruling with regard to the

particular question. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) (reviewing

methods of properly preserving issues for appellate review).  For purposes of appeal, a

question of law with respect to a ruling or instruction of a court during a criminal trial or

proceeding is presented

> [W]hen a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response [] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. Law § 470.05[2] ("§ 470.05[2]").

Section 470.05[2] therefore requires that a defendant's motion to dismiss alert the trial

court judge to the specific deficiency alleged in order to preserve any subsequent

insufficiency of the evidence claims for appeal.  *See People v. Gray*, 652 N.E.2d 919,

922 (N.Y. 1995). Further, insufficiency of evidence claims advanced through a N.Y.

Crim. Proc. Law § 330.30 ("§ 330.30") motion to set aside a verdict, may not be

presented on appeal unless such claim has been properly preserved for review during

the trial by renewal of the motion to dismiss at the close of all the evidence.  *See

Johnson v. Burge*, 2009 WL 3064878, at *4 (W.D.N.Y. Sep't 22, 2009) (citing *People v.

Hines*, 762 N.E.2d 329 (N.Y. 2001)); *Guadmuz v. LaValley*, 2012 WL 1339517, at *9

(E.D.N.Y. April 17, 2012) (New York state courts have consistently held that New York's

25

contemporaneous objection rule, codified in § 470.05[2], requires that the issue on appeal be brought to the attention of the trial court at the time and in a way that gives the trial court the opportunity to remedy the problem and thereby avert reversible error and a potentially unnecessary retrial of an issue that could possibly have been corrected prior to the case being submitted to the jury).  Thus, under New York law, proper objection should delineate more than simple failure to prove an essential, yet unspecified, element of an offense, but direct itself at a specific element or objective circumstance. *See Hawkins*, 900 N.E.2d at 951 (objection to depraved indifference murder conviction based on insufficient evidence should be directed at either the reckless *mens rea* element or objective circumstances evincing a wanton and/or depraved indifference to human life for purposes of preservation of issue of insufficient evidence for appeal).

In this case, on July 18, 2008, in response to the People's motion pursuant to N.Y. Crim. Proc. Law § 200.20, to join the First and Second Indictments for trial, defense counsel moved by omnibus motion for separate trials of the indictments contending Petitioner "has been adamant that there was no threat or physical force used or threat . . . [and Petitioner's] [testimony in that connection may well be important for the jury to consider in deciding whether to convict of the Burglary charge, or a lesser included offense . . . [and Petitioner's] desire to testify in connection with this as well in connection with the Robbery Count."  Nuchereno Affirmation at 22-23 (underlining added).  On August 7, 2008, during the *Wade* hearing, the trial court asked whether defense counsel wanted anything on the record with regard to consolidation of the two indictments:

26

Court Q: Let's put this on. With respect to the issue of the two indictments - -
Nuchereno A: Yes.
Court Q: It is two indictments. I know we talked about it, but did you want anything on the record with regard to that?
Nuchereno A: Judge, I submitted written opposition - -
Court A: Right.
Nuchereno A: – in my omnibus motion regrading the second indictment.
Court A: Right. <u>That's</u> <u>sufficient</u> <u>if</u> <u>you</u> <u>want</u>.
Nuchereno A: And it is sufficient except - - 30 seconds.
Court A: Take as long as you want.
Nuchereno A: My client has the typical dilemma of an individual charged with, for example in the first indictment, burglary in the first degree, two subdivisions, number two and three. Well, if a jury - - and a B violent felony. And <u>if</u> <u>a</u> <u>jury</u> <u>believes</u> <u>that</u> <u>he's</u> <u>not</u> <u>armed</u> <u>or</u> <u>didn't</u> <u>threaten</u> <u>the</u> <u>use</u> <u>of</u> <u>a</u> <u>weapon</u> or that he was the one who caused the physical injury, <u>we</u> <u>don't</u> <u>have</u> <u>a</u> <u>B</u> <u>violent</u> <u>felony</u>; we might have a lesser included felony. And it puts Mr. Rios, who adamantly, Judge, says <u>I</u> <u>didn't</u> <u>threaten</u> <u>a</u> <u>weapon</u> here, et cetera, et cetera. He also said I'm not the one, but <u>no</u> <u>weapon</u>, no injuries. This is - - they came about as a different incident, those injuries. It puts him in the position of saying if I go to trial, I really, really, really have this desire to testify with regard to that, but I don't want to be testifying with regard to the credit card. I don't want that to happen. And so one of the reasons why a Court would not join an otherwise joinable offense is if it places the defendant truly in a position where he ends up not testifying in one because of the other when that is his desire, and he's indicated to me he does want to testify, so I'm telling the Court that. And so we oppose.

(Tr at 36-38) (underlining added).

On August 26, 2008, prior to commencement of the trial, defense counsel further moved for relief *in limine* for separate trials of the two indictments, contending that it was "especially important that [Rios] testify [because] . . . This case involves a Robbery/Burglary where it is alleged that the Defendant <u>threatened</u> <u>the</u> <u>use</u> <u>of</u> <u>physical</u> <u>force</u> and/or caused physical injury. If the Defendant takes the witness stand, his testimony may well place him at the scene of the crime, <u>but</u> <u>there</u> <u>may</u> <u>be</u> <u>testimony</u> <u>in</u> <u>support</u> <u>of</u> <u>the</u> <u>fact</u> <u>that</u> <u>there</u> <u>was</u> <u>no</u> <u>weapon</u> <u>present</u>, <u>none</u> <u>was</u> <u>threatened</u> and that he did not cause physical injury." Motion in Limine at 10. (underlining added).  In response, the trial court judge rejected Petitioner's counsel's request and ruled the two

indictments should be joined for trial.  Trial Court Order September 5, 2008.  Moreover,

on September 2, 2008, during the *Sandoval* hearing, defense counsel again urged the

court to consider separating the indictments against Petitioner on the same issue of law

and fact:

> Court Q: Mr. Nuchereno.
> Nuchereno A: Judge, I would hope that the papers I submitted highlighted three areas. The first being defendant's need to testify especially with regard to the burglary/robbery and the elements of physical injury and threatened use of a weapon. And there is a genuine need. Obviously, those are the most serious counts before the Court. I would also hope that the papers highlighted the area of similarity of the crimes, that the Court take into account, as well as the length of time that has passed since the convictions that Mr. Hackbush spoke of and today.
> Court A: Well, we are going to allow the People to inquire as to whether or not the defendant has been convicted of felonies without specifying the number of felony convictions, but that's it.  None of the facts, none of the underlying, as I said facts or actual convictions, okay. That's it.

(Tr. at 12-13) (underlining added).

At trial, prior to summation and charge, defense counsel moved for dismissal of

the robbery and burglary charges under N.Y. Crim. Proc. Law § 290.10[12] "on the

grounds that the trial evidence was not legally sufficient to establish the offenses

charged herein or any lesser included offenses" (Tr. at 628) (underlining added).  The

trial court denied the motion. (Tr. at 628).  Petitioner's attorney further requested that

the court charge criminal trespass under New York Penal Code § 140.15 in lieu of the

charge of First Degree Robbery because no such crime, *i.e.* robbery, was committed,

---

[12]N.Y. Crim. Proc. Law § 290.10 provides that upon a defendant's motion, the trial court may issue a "trial order of dismissal" dismissing any count of an indictment on the ground that the trial evidence is not sufficient to establish the offense charged or any lesser included offense.  As noted, § 470.05(2) concomitantly, in order to preserve such issue for appellate review, requires defense counsel move to dismiss specifically the particular elemental evidentiary deficiency asserted by defendant.  Discussion, *supra*, at 24.

include a charge of Second Degree Burglary under N.Y. Penal Code § 140.25 in place

of the First Degree Burglary charge on the theory that there was no evidence of use or

threat to use a dangerous instrument, and include a charge for First Degree Assault

under N.Y. Penal Code § 120.10(4) in place of the larceny charge on the theory that

there was no forcible larceny:

> Nuchereno : And under the first count I'm requesting criminal trespass140.15.
> Court Q: Criminal trespass, on what theory, that no crime was committed?
> Nuchereno A: Correct.
> Court Q: What else are you asking for?
> Nuchereno A: Under count 2, burglary in the second degree under 140.25.
> Court Q: Which is no use of an instrument?
> Nuchereno A: Yes, Judge.
> Court Q: Or no threatening use of an instrument?
> Nuchereno A: Yes, Judge.
> Nuchereno A: Under count 3, assault in the first degree under 120.10-4.
> Court Q: Assault. What's the theory? That there was no forcible larceny?
> Nuchereno A: Yes, that there was no forcible larceny.
> Court A: Well, then it wouldn't be robbery, it would be larceny. But it wouldn't be assault. That's another whole crime.
> Nuchereno A: I think it is a lesser, Judge.
> Court Q: Assault. What assault?
> Nuchereno A: Assault in the first degree.
> Court Q: You want me to charge assault in the first degree as a lesser under count 3? I'll look at it. I don't know if there is any reasonable view of the evidence with respect to that Mr. Hackbush.
> ADA Hackbush A: I agree with that. How can it be a lesser included if it's the same level first of all? And second of all, assault is not a lesser included of robbery in the first degree. I don't see with regard to Mr. Nuchereno's first count, I don't see any reasonable view of the evidence where this would be just a misdemeanor criminal trespass. The allegations are that he entered unlawfully into a dwelling with the intent to commit a crime and also used or threatened the immediate use of a knife or caused physical injury. I don't see that there is any reasonable view of the evidence that would allow it to go down to a misdemeanor on that. As for the burglary second, I suppose that would be a lesser included of probably both burglary, both counts of burglary in the first degree, but definitely not a misdemeanor.
> Court: Well, again, I tend to think that trespass is out and the assault is out but I will look at them a little more carefully and let you know. I guess I can charge the lesser burglary second under count 2 on the theory of whether or not there was any threatening immediate use of a dangerous instrument. I guess that's a

     <u>factual</u> <u>issue</u>.

(Tr. at 635-37) (underlining added).

On appeal, in accordance with applicable New York law, *Hawkins*, 900 N.E.2d at 946,

the Appellate Division determined that defense counsel's § 290.10 motion merely

raised, in general terms, the prosecutor's failure to prove all of the elements of the First

Degree Robbery and Burglary counts without pointing to the specific elements of each

count, thus failing to enable the trial court to assess whether any such failures of the

prosecutor's proof had occurred.  *Rios*, 899 N.Y.S. 2d at 769.  As the record reveals,

however, such characterization is plainly at odds with counsel's repeated references to

a lack of evidence with respect to the required element for both First Degree Robbery

and Burglary counts that the defendant be found to have threatened the imminent use

of a weapon as required under applicable New York State law, *see, Pena*, 406 N.E.2d

at 1350; *White*, 548 N.Y.S.2d at 119; *Hilton*, 535 N.Y.S.2d at 710, as acknowledged by

the trial court on September 4, 2008, when Petitioner, prior to the trial court submitting

the case to the jury, moved to dismiss. (Tr. at 635-37).

    In this case, however, as previously discussed, Discussion, *supra*, at 27-29, the

trial court's rulings with regard to the required element of use or threat to use a

dangerous instrument under the First Degree Burglary and First Degree Robbery

counts demonstrates the issue of legal sufficiency, and therefore preserves, contrary to

the Appellate Division's view of the record, the issue of sufficiency of evidence to

support the use or threat to use a dangerous instrument, a required element for

conviction of First Degree Robbery and First Degree Burglary, for appellate review.

*See* N.Y. Crim. Proc. Law § 470.05[2]*, Garvey*, 485 F.3d at 714 (a question of law is

preserved for appeal if in response to a protest by a party the court expressly decided

the question raised on appeal).  As such, the issue of sufficient evidence to prove the

element of use or threat to use a dangerous instrument to support Petitioner's

conviction of First Degree Burglary and First Degree Robbery was not procedurally

defaulted at trial and thus was preserved for appellate review but for the Appellate

Division's reliance on § 470.05[2] as a bar to consideration of Petitioner's federal due

process claims on this issue in determining whether state appellate court reliance on

the state's procedural rule to avoid reaching a federal constitutional claim represents an

adequate state ground upon which to refuse to exercise federal habeas review.

Federal courts are required to evaluate whether the state court's reliance on procedural

default rule was exorbitant and thus inadequate.  See *Fong v. Poole*, 522 F.Supp.2d

642, 653 (S.D.N.Y. 2007).  Specifically, Petitioner raised this issue with the trial court

opposing consolidation (Tr. at 36-38), in requesting the court instruct on lesser included

offenses, a request the court refused (Tr. at 635-37), and finally in requesting dismissal

for failure of proof on this critical required element, (Tr. at 628  ) which the trial court

also denied. (Tr. at 628).  Thus, Petitioner, as required by § 470.05[2], preserved the

question of the sufficiency of the evidence to support the element of use of a weapon

required for Petitioner's Robbery and Burglary First Degree (§ 140.30(3)) convictions

when Petitioner requested dismissal, having properly raised the identical issue in

opposing consolidation and in requesting lesser included offenses of assault and

trespass "at the time of such ruling or instruction or at any other subsequent time when

the court had an opportunity of effectively changing the same." § 470.05[2].  The court

therefore proceeds to consider whether application of § 470.05[2] by the Appellate

Division was, on this record, "exorbitant" thereby requiring this court to consider the merits of Petitioner's federal due process claim directed to the lack of sufficient evidence to support Petitioner's conviction on the First Degree Robbery and Burglary counts.  *See Whitley*, 642 F.3d at 285 (construing *Lee*, 534 U.S. at 375; and *Garvey*, 485 F.3d 709 at 714).

## 2. Exorbitance

The Supreme Court has established three special considerations for evaluating when an otherwise adequate state procedural ground for a decision improperly blocks district court adjudication of a habeas petitioner's federal claim. *See Lee*, 534 U.S. at 381. These considerations include (1) whether the alleged procedural violation was actually relied on by the trial court, and defense counsel's perfect, *i.e.,* precise and exacting, compliance with each specific element of the procedural prerequisite for preserving an error for appellate review would have made a difference, compliance with the state rule would have changed the trial court's initial decision; (2) whether state case law indicates that compliance with the rule was demanded in the specific circumstances presented; and, (3) whether defense counsel substantially complied with the rule given the realities of trial, thereby placing the habeas claim within the small category of exceptional cases where an otherwise sound state procedural rule is inadequate to bar federal review of a petitioner's constitutional claim. *Lee*, 534 U.S. 362, 376 (2002); *Cotto*, 331 F.3d at 240.  The Second Circuit employed the Supreme Court's analysis in *Lee* when reviewing Appellate Division decisions in affirming criminal convictions that state procedural grounds such as § 470.05[2] serve to bar federal habeas review.  *Downs*, 657 F.3d at 107, *Garvey*, 485 F.3d at 719.  *See also Fong*, 522

F.Supp.2d at 653.  The court is thus required to address the applicability of each consideration to the instant record in turn to determine whether in this case, the Appellate Division's refusal to address Petitioner's sufficiency of the evidence due process claim was based on an adequate procedural bar.

***a. Did the trial court rely on the procedural violation?  Would perfect compliance with the state rule have changed the trial court's ruling?***

Although the first *Lee* factor is not as relevant in the case of contemporaneous objections as other procedural bars, "because the lack of contemporaneous objection would not, almost by definition be mentioned by the trial court," *Fong*, 522 F.Supp.2d at 655, evidence of the first *Lee* guidepost weighs in a petitioner's favor where the trial court is aware of defense counsel's desire for a specific charge and elects against issuing such charge.  *Fong*, 522 F.Supp.2d at 655 (defense counsel request for soft *Allen* charge put trial court on notice enough to satisfy contemporaneous objection rule).  In this case, defense counsel put forth a motion *in limine*, opposing consolidation of the two indictments served against Petitioner, alleging that it was "especially important that [Rios] to testify [because] . . . [t]his case involves a Robbery/Burglary where it is alleged that the Defendant threatened the use of physical force and/or caused physical injury. If the Defendant takes the witness stand, his testimony may well place him at the scene of the crime, but there may be testimony in support of the fact that there <u>was</u> <u>no</u> <u>weapon</u> <u>present</u>, none was threatened and that he did not cause physical injury."  Motion in Limine at 10.   Additionally, as noted, Discussion, *supra*, at 28-29, during trial, defense counsel urged the trial court judge to charge the jury with lesser included offenses under charges of First Degree Burglary, trespass, and First

33

Degree Robbery, assault, on the grounds that there was insufficient evidence to establish the offenses charged, particularly, the use or threatened use of a weapon (Tr. at 628), which the trial court denied. *Id*. The Appellate Division declined to review Petitioner's claim of legal sufficiency necessary to support the element of use or threat to use a dangerous instrument necessary for conviction of § 160.15(3) (Robbery in the First Degree) and § 140.30(3) (Burglary in the First Degree) based on Petitioner's failure to preserve the issue by appropriate objection during trial. *Rios*, 899 N.Y.S.2d at 769.

In *Osborne v. Ohio*, 495 U.S. 103 (1990) ("*Osborne*"), the Supreme Court examined the defense counsel's failure to object first during trial, and subsequent failure to object at the end of trial during a judge's charge to the jury, holding that a defense failure to urge the trial court to instruct the jury on the element of *scienter* during the jury charge qualified as an adequate state-law ground to prevent the court from reaching, in a habeas proceeding, due process issues on that ground. *Osborne*, 495 U.S. at 124. Nevertheless, the *Osborne* court ruled that a clearly stated objection during trial on the element of lewdness, a required element of the crime of child pornography under Ohio law, that was later overruled and rejected by the trial court judge, was an "atypical instance," where applicability of the state procedural rule would serve no perceivable state interest, and should thus not bar review of the federal claim. *Id*. Here, as in *Osborne*, defense counsel's objection to Petitioner's possible conviction for Robbery and Burglary first based on insufficient evidence of a required element was ample and timely enough to bring Petitioner's alleged federal question to the trial court's attention sufficient enough to enable the trial court to take corrective action to satisfy

34

the legitimate state interest to protect the state's contemporaneous objection rule in order to allow federal habeas review.  As such, on this record, unwavering application of the state's procedural rule serves no perceivable state interest.

The second inquiry, whether perfect compliance would have had an impact on the trial court's decision, is irrelevant here as Petitioner maintained compliance with § 470.05[2] throughout the trial.  Compliance with § 470.05[2] is satisfied when defense counsel, during a preliminary hearing or trial, expressly or impliedly seeks or requests a particular ruling or instruction by the trial court judge.  *Sanford v. Burge*, 224 F.Supp.2d 289, 300 (E.D.N.Y. 2004) (legal issue presented during suppression hearing enough to put trial judge on notice and preserve issue for appeal).  As discussed, Discussion, *supra* at 33, defense counsel in this case objected twice, via *in limine* and § 290.10 motion, to insufficient evidence necessary to support the required element of use of a dangerous instrument under First Degree Robbery and Burglary § 140.30(3).  The court therefore finds the first consideration under *Lee* establishes that the Appellate Division's application of § 470.05[2] to refuse consideration of Petitioner's due process claim is exorbitant, and accordingly, proceeds to review Petitioner's sufficiency claim under the second *Lee* guidepost.

**b. Does New York State caselaw indicate compliance with N.Y. Crim. Proc. Law § 470.05[2] was demanded in the circumstance presented?**

In *Lee,* the Supreme Court examined a unique circumstance where sudden or unanticipated events resulted in defense counsel's failure to comply with a procedural rule.  *Lee*, 534 U.S. at 382.  New York State courts have not yet ruled on whether perfect compliance with § 470.05[2] is demanded on the issue of insufficient evidence

where the issue is put before the court by a motion *in limine*, omnibus motion, and objections during Petitioner's pre-trial *Wade* and *Sandoval* hearings.  Accordingly, defense counsel's four proffered objections in this case, that evidence was insufficient to support charges of First Degree Burglary and First Degree Robbery because absolutely no evidence established that Petitioner either used or threatened to use a weapon in his possession, a requisite element for conviction of First Degree Burglary and First Degree Robbery, are enough to preserve the issue for federal habeas review. During the normal course of trial, it would be unreasonable to presume defense counsel would foresee a need to further particularize counsel's previously proffered objections to the charges of First Degree Robbery and Burglary based on insufficient evidence.  In circumstances such as here, where application of an otherwise sound state rule is so "exorbitant" as to render it inadequate to prevent consideration of a federal claim, it is proper to rely on the narrow exception afforded by the Supreme Court.  In this case, reliance on state procedural grounds to bar this court's review of Petitioner's habeas petition on such grounds is "exorbitant" under *Lee*, and may not serve to bar federal review of Petitioner's claim.

**c. Did petitioner substantially comply with the state rule given the realities of the trial, thus placing Petitioner's habeas claim in the small category of exceptional cases where an otherwise sound state procedural rule is inadequate to bar federal review of the petitioner's constitutional claim?**

The fundamental rationale of N.Y. Crim. Proc. Law § 470.05[2] is to provide a trial court judge with the opportunity to rule on an issue of law before it can be raised on appeal.  *Garvey*, 485 F.3d at 720.  In the instant case, Petitioner's motion *in limine*, §

290.10 motion (Tr. at 628), and requests for lesser charges (Tr. at 634-38), specifically, that there was insufficient evidence to support Petitioner's conviction on the charges of First Degree Burglary and First Degree Robbery based on the absence of any evidence that Petitioner possessed a weapon (Tr. at 635-37), served to provide the trial court judge the opportunity to rule on that issue as § 470.05[2] expects.  In fact, in response to Petitioner's requests for lesser included offenses, the trial court judge opined that he "tend[ed] to think that trespass is out and the assault is out but [that he would] look at them a little more carefully."  (Tr. at 637).  The trial court's unequivocal rejection of Petitioner's motion *in limine* opposing consolidation for trial of the First and Second Indictments to accommodate Petitioner's wish to testify to the required element of use of a dangerous instrument, and subsequent ruling on whether to include a lesser charge of assault on the basis of insufficient evidence to support the First Degree Burglary and Robbery counts, establishes that the trial court was on notice about the legal issue in question: that there was insufficient evidence to support the requisite element of use or threat to use a dangerous instrument for conviction of First Degree Robbery and First Degree Burglary.  New York federal courts have held that where a defendant impliedly sought a ruling from the trial court, the defendant has sufficiently protested to preserve the issue for appellate review under § 470.05[2] as well as federal habeas review.  *Fong*, 522 F.Supp.2d at 649  (no procedural bar to federal habeas review where defense request for jury instruction is rejected by trial court in alternative instruction to jury) (citing *Cotto*, 331 F.3d at 244-45).  Rather, a party requesting relief that is denied is not required to make additional protests to satisfy requirements under § 470.05[2], *Cotto*, 331 F.3d at 247 (quoting *People v. Mezon*, 603 N.E. 2d 943, 946

37

(N.Y. 1992) ( '"[t]he law does not require [litigants] to make repeated pointless protests" after the court has ruled."')).

The trial court in this case was afforded ample notice by defense counsel's repeated requests for relief on the issue of whether sufficient evidence existed to support conviction of First Degree Burglary and First Degree Robbery, and, as such, no legitimate state governmental interest is served by requiring further compliance by the Petitioner.  Application of N.Y. Crim. Proc. Law § 470.05[2] to the facts of this case is exorbitant, and thus inadequate to bar the district court's review of Petitioner's federal due process claim of sufficient evidence.  Having found all three factors required by *Osborne* and *Lee,* requires a finding that Petitioner's claim of insufficient evidence is not procedurally barred, Petitioner's case is an "atypical instance" where applicability of the state procedural rule would be exorbitant and serve no perceivable state interest.  *Lee*, 534 U.S. at 378.  Petitioner's due process claim based on insufficiency of evidence thus is preserved for federal habeas review, and the court therefore turns to review the merits of Petitioner's claim.

## 3. The federal question under *Jackson v. Virginia*

As discussed, Discussion, *supra*, at 14, petitioners seeking habeas relief must demonstrate that the adjudication of the petitioner's federal constitutional claims resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal constitutional law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1); *see Narrod v. Napoli*, 763 F.Supp.2d 359, 370 (W.D.N.Y. 2011).

In this case, Petitioner argues that his conviction on charges of First Degree Burglary and Robbery violated the Due Process Clause of the Fourteenth Amendment,

which forbids conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the defendant is charged.  *See* 28 U.S.C. § 2254(d); *Jackson*, 443 U.S. 307 at 324.  In particular, Petitioner alleges that insufficient evidence supports that Petitioner used or threatened to use a dangerous instrument as required for conviction under N.Y. Penal Law § 160.15(3) (First Degree Robbery), and N.Y. Penal Law § 140.30(3) (First Degree Burglary).  Petitioner's Reply at 5-6.

 *Jackson v. Virginia*, 443 U.S. 307 (1979) ("*Jackson*") establishes that the relevant inquiry for sufficiency of evidence is whether, after reviewing evidence in light most favorable to prosecution, any rational trier of fact could have found essential elements of crime beyond a reasonable doubt.  The standard set forth by the Supreme Court under *Jackson*, must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.  *Langston*, 630 F.3d 310, 314 (2d Cir. 2011) (citing *Jackson*, 443 U.S. at 324 n. 16; and *Henry v. Ricks*, 578 F.3d 134, 138 (2d Cir. 2009)).  "'[W]here a fact to be proved is also an element of the offense . . . . it is not enough that the inferences in the government's favor are permissible . . . [T]he inferences [must be] sufficiently supported to permit a rational juror to find that the element . . . is established beyond a reasonable doubt,'" *Langston*, 630 F.3d at 314 (quoting *United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir. 1995)).  The court thus looks to the relevant state law to determine the elements of the crimes for which Petitioner challenges his convictions.

 Under New York law, first degree robbery requires the "threat or use of a dangerous instrument."  N.Y. Penal Law § 160.15(3) ("§ 160.15(3)").  A dangerous instrument means "any instrument article, or substance, including a 'vehicle' . . . which,

under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious injury." N.Y. Penal Law § 10.00(13). To convict under § 160.15(3), a jury must find that the defendant actually possessed a dangerous instrument at the time of the crime. *See Anderson v. McClellan*, 1997 WL 739582, at *2 (S.D.N.Y. November 26, 1997) (citing *Pena*, 406 N.E.2d at 1350)). The requirement of actual possession is not explicit in the statute but, rather, is based on controlling New York caselaw. *People v. Ford*, 903 N.E.2d 256, 258 (N.Y. 2008) (holding mere threats are not enough to establish possession). *See People v. Moore*, 586 N.Y.S.2d 647, 648 (2d Dep't. 1992)(mere threat not sufficient where complainant did not see a knife, or feel anything similar pressed against him). Whereas the brandishing of a weapon is sufficient to constitute "use," verbal threats alone will not give rise to the "imminent use of force by means of an instrument 'readily capable of causing death or other serious physical injury.'" *Pena,* 406 N.E.2d at 1350 (citing *People v. Woods*, 360 N.E.2d 1082 (N.Y. 1977)).

Although a robbery defendant's statement "I have a knife" paired with a gesture to indicate the same when considered together will support a jury finding the use or threat of immediate use of a knife in the course of a robbery, *Ford*, 903 N.E.2d at 258 (perpetrator's statement that he possessed a knife at the same time he was moving his hand toward his pants pocket was enough to establish that defendant used or threatened to use a knife in the course of a robbery), no threatening statement paired with a moving gesture is evident on the record in this case; rather, the trial record is devoid of any evidence that Petitioner's statement that he would stab Hobbs if she did not stop screaming was accompanied by any gesture to indicate that Petitioner

40

exercised dominion or control over any instrument he could use to stab Hobbs. Notably, Hobbs's own testimony was that while Petitioner threatened to stab her, he did not make a gesture like he was reaching for a knife (Tr. at 417); on the contrary, Hobbs testified that she did not see a knife in the Petitioner's hand, and that although she knew there were two butcher blocks containing knives located within her view in her kitchen (Tr. at 418), she did not notice whether or not Petitioner was actually looking at the knives when uttering his threat.  (Tr. at 418).  Moreover, in this case it is undisputed that during his assault on Hobbs Petitioner did not move or gesture toward Hobbs's kitchen where her knives were kept as if to get a knife to assault Hobbs.  Nor did the trial testimony establish that Petitioner ever observed the knives in the kitchen or was even aware of their presence.  As such, based on the trial evidence available here, no rational trier of fact could reasonably have found that Petitioner committed First Degree Robbery under § 160.15(3) based on possessing a weapon sufficient to constitute its threatened use during the robbery, *see Pena*, 406 N.E.2d at 1350; *People v. Perlata*, 770 N.Y.S.2d 339, 341 (1st Dep't. 2004); *Hilton*, 535 N.Y.S.2d at 710 ; *Moore*, 586 N.Y.S.2d at 648; *White*, 548 N.Y.S.2d at 119 ; *People v. Robare*, 486 N.Y.S.2d 393, 395 (3rd Dep't. 1985).  Petitioner's conviction on First Degree Robbery without evidence of actual possession of a dangerous instrument thus results in a finding the Appellate Division's rejection of Petitioner's due process contention on procedural default grounds constituted an unreasonable application of federal law as determined by the Supreme Court.

Similarly, conviction under N.Y. Penal Law § 140.30(3) (First Degree Burglary) like conviction for Robbery First, also requires actual possession of a weapon, and no

evidence in the record establishes Petitioner possessed a weapon to meet the definition of "used or threatened to use" to support a conviction of First Degree Burglary in this case.  See *White*, 548 N.Y.S.2d at 120 (threat with razor not seen by victim or later recovered not enough to establish evidence of possession for jury conviction of First Degree Burglary).  As discussed, Discussion, *supra* at 31-32, evidence is sufficient to support a conviction when "after reviewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  The court recognizes that when faced with a record of historical facts that support conflicting inferences, a habeas court must presume that the trier of facts resolved any such conflicts in favor of the prosecution. *Id*.  Nevertheless, on this record, no evidence exists that Petitioner ever possessed a dangerous instrument during his entry into Hobbs's apartment or during his assault on Hobbs, and Respondent points to none.  In fact, as discussed, Discussion, *supra*, at 40, Hobbs's own testimony supports that Petitioner did not possess a knife during the incident, that Hobbs did not see or feel a knife in Petitioner's possession during the ensuing struggle after Petitioner focibly entered Hobbs's apartment, and that no knife was recovered from Hobbs's' apartment by the police after the crime.  (Tr. at 320, 353).  Given the evidence that conclusively demonstrates, as supported by Hobbs's testimony, that Petitioner did not possess a dangerous instrument (a knife), make a gesture to indicate possession of a knife, or move toward the knives stored in Hobbs's kitchen, the Appellate Division's refusal, based on an exorbitant application of a state procedural requirement, to find sufficient evidence that Petitioner possessed a dangerous instrument amounts to an unreasonable application

of clearly established federal constitutional law as required by 28 U.S.C. § 2254(d)(1)(2), specifically that Petitioner's conviction of these counts contravenes the requirements of the Due Process Clause under *Osborne* and *Jackson*.

Judges must be highly deferential to the jury's conviction and view evidence in the light must favorable to the prosecution and uphold the jury's verdict unless the evidence the defendant committed the alleged crime is nonexistent or so meager that no reasonable jury could convict. *Jackson*, 443 U.S. at 319. This standard must be applied with specific reference to the substantive elements of the criminal offense as defined by state law, and, where a fact to be proved is an element of the offense, it is not enough that the inferences in the government's favor are permissible, the inferences must be sufficiently supported to permit a rational juror to find that the element is established beyond a reasonable doubt. *Langston v. Smith*, 630 F.3d 310, 315 (2d Cir. 2011). Viewing the evidence here, in the light most favorable to the prosecution, the court finds the Appellate Division properly determined that Petitioner's conviction on the charge of First Degree Burglary § 140.30(2), based on causing physical injury to Hobbs during the assault, is based on sufficient evidence.

Nevertheless, where, as here, based on the evidence or, more relevantly the absence of evidence, as presented to the jury, no reasonable jury could have found the essential element of actual possession of a dangerous instrument required under N.Y. Penal Code § 160.15(3) (First Degree Robbery) and § 140.30(3) (First Degree Burglary) beyond a reasonable doubt, a habeas petitioner is entitled to relief. 28 U.S.C. § 2254(d) (writ for habeas corpus appropriate only where state court adjudication on the merits resulted in a decision that was contrary to, or involved unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United

States, or resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding); *See*

*Langston,* 630 F.3d at 319 (writ granted where evidence was constitutionally insufficient

to support required element for conviction of felony assault);   As such, Petitioner's claim

for relief as it relates to insufficiency of the evidence in violation of Petitioner's right to

federal due process is meritorious, and the Petition is GRANTED on this claim.

**Weight of Evidence**

Petitioner also contends that the verdict was against the weight of the evidence.

Petition, ¶ 12(B) at 22.  The question of weight of the evidence is, however, a question

of state law, which precludes a federal habeas court from its review.  *Lopez v. Heath,*

2011 WL 3055415, at *7 (S.D.N.Y. Apr. 6, 2011) (quoting *Mckinnon v. Superintendent,*

*Great Meadows Corr. Facility*, 355 Fed. Appx. 469, 475 (2d Cir. 2009)("the argument

that a verdict is against the weight of the evidence states a claim under state law, which

is not cognizable on habeas corpus")).  As such, this ground of the Petition is without

merit and is therefore DISMISSED.

**C. Third Ground - Consolidation of the Indictments for Trial**

As the Petition is granted with respect to the charges of First Degree Robbery

and Burglary, Petitioner's claim based on consolidation is moot.  In the interest of

completeness, however, the court proceeds to review the issue.

 Petitioner alleges the trial court erred in consolidating, as affirmed by the

Appellate Division, the two indictments against him for trial, Petition ¶12(C) at 30,

because of his stated intention to testify in defense of the First Indictment which

included the Burglary First, Robbery First and Larceny counts, but did not wish to testify in defense of the charges under the Second Indictment charging the Criminal Possession of Stolen Property, Identity Theft and Forgery counts.  According to Petitioner, he wished to testify at trial only on the First Indictment that there was no threat or use of physical force to support the First Degree Burglary count, and also to negate the use or threatened use of a dangerous instrument necessary to support the First Degree Robbery count, Petition ¶12(C) at 31, but was restrained by the consolidation of the First and Second Indictments for trial because the prosecution intended to use photographs and a videotape of Petitioner using Hobbs's credit cards in support of the Second Indictment, and, that upon taking the stand in a consolidated trial to testify as in defense of the criminal charges under the First Indictment he could be questioned on all of the charges under the Second Indictment as well.  *Id*.  Respondent contends, that even upon a successfully opposed consolidation, Petitioner would face the same proof on both indictments at trial.  Respondent's Memorandum at 19.  The Appellate Division concluded that the offenses delineated within each indictment were properly consolidated for trial pursuant to N.Y. Crim. Proc. Law 200.20[2](a) ("§ 200.20[2](a)") because they were based on the same criminal transaction. *Rios*, 899 N.Y.S.2d at 771.

 N.Y. Crim. Proc. Law § 200.20[2] provides that two offenses are "joinable," *i.e.*, able to be consolidated, for trial when

> (a) They are based upon the same act or upon the same criminal transaction, as that term is defined in subdivision two of section 40.10; or
> (b) Even though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of

the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first; or

(c) Even though based upon different criminal transactions, and even though not joinable pursuant to paragraph (b), such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law.

N.Y. Crim. Proc. Law § 200.20[2](a)(b)(c)(McKinney 1984)

N.Y. Crim. Proc. Law § 40.10 provides "criminal transaction" means

conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either

(a) so closely related and connected in point of time and circumstances of commission as to constitute a single criminal incident, or

(b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.

N.Y. Crim. Proc. Law § 40.10(a)(b).

Where consolidation for trial of separately indicted charges are challenged, habeas relief is available only where the consolidated trial so undermines the fairness of the trial that it violates constitutional due process standards. *McCall v. Artus*, 2008 WL 4501834, at *8 (S.D.N.Y. Sep't 29, 2008)(habeas relief not warranted where petitioner did not show jury verdict evidenced a lack of understanding of the separate charges, confusion regarding the standards of proof under each charge, trial was overly lengthy and thus prejudiced the defense, or "but for" the joint trial defendant would have been acquitted). Denial of due process resulting from consolidated indictments occurs only when a petitioner can prove actual prejudice undermined the jury's ability to make separate evaluations of all of the evidence. *Id*.

Here, the record fails to establish that there was substantially more proof against Petitioner on one set of charges such that it was likely the jury would be unable to consider separately the proof as it related to each offense and that Petitioner suffered

from the spill-over prejudice from the stronger case. Both Hobbs and Ross provided testimony that Petitioner drove away from the crime scene in a bluish green vehicle bearing the same license plate as the individual who other witnesses, Salerno and Beebe, testified had used Hobbs's credit card to purchase cigarettes and other items later that day.  (Tr. at 325, 455).  Further, as Respondent alleges, Respondent's Memorandum at 19, Petitioner would face the same proof on both offenses at trial. *See*, *People v. Rojas*, 760 N.E.2d 1265, 1268 (N.Y. 2001); *People v. Molineux*, 61 N.E. 286, 293 (N.Y. 1901) (exceptions under which prior crime evidence can be admitted include motive, intent, absence of mistake or accident, identity, or common scheme or accident).[13]  Accordingly, even if consolidation had not been granted, and Petitioner were tried separately on the First and Second Indictments and testified as to his lack of use of a weapon on the First Indictment , Petitioner would have faced the same incriminating evidence establishing both the Burglary, Robbery charges and theft of Hobbs's credit cards as well as the subsequent possession and fraudulent misuse of the cards.  Given the trial court's failure to include the required possession instruction going to the Robbery and Burglary counts, Petitioner's testimony would have been unavailing even assuming the jury believed him.  As such, joining the indictments was permissible as separate trials would not have gained Petitioner any advantage over the consolidated trial.  Specifically, Petitioner would have been subjected to cross-examination as the subject matter of both indictments had he testified at separate trials. Further, the scenario was relatively uncomplicated, and the evidence against Petitioner

---

[13] *See also* Federal Rule of Evidence 404(b) permitting admissibility of other crimes, wrongs or bad acts on case in chief of evidence showing as relevant a defendant's motive, intent, preparation, common scheme or plan, and identity.

was strong (with the exception of the actual possession of a dangerous instrument that is the basis of Petitioner's insufficiency of evidence claim) and therefore there was little likelihood of prejudicial jury confusion or actual prejudice to Petitioner.  Thus, the record does not indicate any reason to believe the jury was prevented from independently evaluating the evidence presented in support of each indictment.  Petitioner's writ, insofar as it asserts a violation of Due Process for improper consolidation of the indictments, is thus without merit, and moot as a result of the grant of the writ based on Petitioner's Second Ground of Relief.

## D. Fourth Ground - Prosecutorial Misconduct

Petitioner alleges that the prosecutor improperly solicited prejudicial testimony, made improper personal observations related to Petitioner's guilt, and that the trial court's failure to issue a corrective instruction to the jury thereby denied Petitioner's constitutional right to a fair trial.  Petition ¶ 12(D) at 39.  Petitioner's contention is more properly considered as an issue to admit inadmissible hearsay.  In particular, Petitioner asserts that the prosecutor engaged in improper solicitation of prejudicial testimony from Detective Dates, Petition ¶ 36, and that, upon direct examination, improperly questioned whether Wrest was familiar with the Petitioner:

> ADA Hackbush Q: Based upon that call to the Silver Creek Police Department did you determine who the name of the suspect would be?
> Detective Wrest A: Yes.
> ADA Hackbush Q: Who was that?
> Detective Wrest A: Elvin Rios.
> ADA Hackbush Q: Okay, and so armed with this information from the victim and the Silver Creek Police Department, what did you do?
> Detective Wrest A: I called Detective Dates and asked him to assist me on this case.
> ADA Hackbush Q: And was he also familiar with the defendant?
> Mr. Nuchereno: Objection

(Tr. at 569-70).

The trial court sustained defense counsel's objection to strike the testimony of

Wrest, and instructed the jury to disregard the testimony of Detective Wrests in its

entirety.  (Tr. at 632).  *Id*.

Petitioner further alleges that the prosecutor solicited improper testimony in

response to a question about the owner of the vehicle that matched the description

provided by Hobbs and the police search of the vehicle's license plate number:

> ADA Hackbush Q: All right, and once Patricia Wrest had described the vehicle
> and the registrant what did you know the vehicle to be?
> Detective Dates A: I immediately said to her on the phone Elvin Rios.

(Tr. at 584-85).

After an objection by defense counsel (Tr. at 585), the trial court overruled the objection

(Tr. at 585), and the prosecutor's examination continued, with Dates responding:

Detective Dates A. Yes, I was familiar with him for approximately 2 to 3 years,

sir. (Tr. at 585).

Prior to summation and charging, defense counsel moved to strike the complete

testimony of Dates, alleging Dates's testimony regarding his ability to identify Petitioner

implied that Dates, as a police officer, had some prior criminal contact with the

Petitioner.  (Tr. at 626-27).  Following an objection, the trial court granted defense

counsel's motion to strike the entirety of Dates's testimony, (Tr. at 628), and issued a

curative instruction to the jury "[i]n your absence I have stricken the entire testimony of

Detective Dates as being cumulative and irrelevant . . . everything he said is not to be

considered by you as evidence in this case." (Tr. at 632).

Respondent maintains that the court's curative instruction to the jury was

sufficient to cure any prejudice that may have been suffered by Petitioner, that the

Appellate Division's reliance on the preservation rule, New York Crim. Proc. Law §

470.05[2], constitutes an adequate and independent state ground barring Appellate

Division review of the prosecutor's misconduct during summation, and that the

prosecutor's remarks did not "so infect the trial as to make the resulting conviction a

violation of due process."  Respondent's Memorandum at 20-21.

        The test for denial of due process based on prosecutorial misconduct is fairness

of the trial, not the culpability of the prosecutor.  *Stone v. Stinson*, 121 F.Supp.2d 226,

242 (W.D.N.Y. 2000) (citing *Smith v. Phillips*, 455 U.S. 209 (1982)).  In order for a

prosecutor's misconduct to rise to the level of a violation of due process, the

prosecutor's statements must have "so infected the trial with unfairness as to make the

resulting conviction a denial of due process."  *Darden v. Wainwright,* 477 U.S. 168, 182,

(1986).  "'In evaluating whether allegedly improper comments by the prosecutor are

grounds for reversal, the fundamental question is whether, if there was misconduct, it

caused substantial prejudice to the defendant, thereby depriving him of his right to a fair

trial.'" *Stone*, 121 F.Supp.2d 226, 242 (W.D.N.Y. 2008) (quoting *United States v.

LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991).  Under § 2254(d), a prosecutor's

misstatements must be considered against the backdrop of the entire trial, including the

amount of evidence against the defendant, the court's instructions to the jury, and a

requirement that the prosecutorial statements not be overly excessive or inflammatory.

*See Floyd v. Meachum*, 907 F.2d 354-55, 347 (2d Cir. 1990).  Prosecutorial

misstatements, even if seemingly improper, do not necessarily exceed the broad range

of rhetorical comments allowed in closing arguments.  *Harper v. Kelly,* 704 F.Supp. 375,

50

379 (S.D.N.Y. 1989)(rhetorical comments are allowed if they do not otherwise exceed the range allowed or inflame the passions or prejudices of the jury).

Additionally, the prosecutor's remark in summation "we can look at Mr. Rios and say, we know what a guilty person looks  like" (Tr. at 689), was not objected to by defense counsel and, based on such failure to preserve the issue for federal review, is procedurally defaulted unless Petitioner can demonstrate cause for the procedural default and prejudice resulting therefrom, or failure to consider the claim to grant relief will result in a fundamental miscarriage of justice.  *Stone*, 121 F.Supp.2d 226, 244 (W.D.N.Y. 2000) (citing *Vargas v. Keane*, 86 F.3d 1273, 1280 (2d Cir. 1996)). Petitioner has shown no such cause and prejudice and accordingly, no constitutional error can be attributed to the prosecutor's direct examination of Dates.  Defense counsel's failure to object to the prosecutor's comment on Petitioner's guilt was not preserved and thus properly precluded Appellate Division review and habeas review. Petitioner's claim that he was denied a fair trial by prosecutorial misconduct is thus without merit.

Accordingly, the Petition is DENIED as to these claims.


## CONCLUSION

Based on the foregoing, the Petition for a writ of habeas corpus pursuant to 29 U.S.C. § 2254 is GRANTED with regard to Ground Two of the Petition, with issuance of the writ appropriate, and DISMISSED with regard to Grounds One, Three and Four of the petition and no Certificate of Appealability shall issue as to the dismissed grounds. Petitioner's convictions for Robbery in the First Degree (§ 160.15(3)) and First Degree

Burglary (§ 140.30(3)) should be set aside within one hundred twenty (120) days of this Order.  The Clerk of the Court is directed to close this file.


SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 22, 2014
            Buffalo, New York


**Any petition for permission to appeal with the Circuit Clerk, United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in this action.  *See* Fed.R.App. 4(a)(1)(A). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.**